Good morning. May it please the Court. Good morning. Please proceed. It's Joe Ergastolo for Bona Fide Conglomerate, Inc., the petitioner. With me today are my law partner, Andrew Skouten, and my co-counsel, Mark Tuft. I will address the privilege issue, and Mr. Tuft will address the ethics issues and the remedy. We request three minutes of time for rebuttal, and I'll use about seven minutes, and the rest of my time will go to my co-counsel. This is not your typical inadvertent disclosure case. The statements at issue here were voluntarily provided by Gene Robinson to Bona Fide CEO Ruben Lopez under no compulsion. At issue are eight excerpts, not one of them more than a paragraph or too long, out of 30 hours of transcribed testimony, transcribed sessions. After Source America learned of the existence of the tapes containing the excerpts, had demanded that Mr. Craig, the attorney that was disqualified, cease using the tapes and return them as if they ever belonged to Source America, return them to Source America. Initially, Source America didn't even identify the privileged communications in the tapes. It simply asserted a blanket waiver or a blanket privilege over everything. It wasn't until the disqualification hearing itself. Well, did Mr. Craig attempt to work with Source America in any way in identifying the privilege and in making sure that privilege information didn't improperly get used or disseminated? The eight excerpts at issue were never used or disseminated. That's undisputed in this case. No, I'm talking about you're saying that they asserted a blanket waiver. I'm saying did counsel then attempt in any way to work with? We did. There's an exchange of correspondence in October of 2014 wherein Source America stated originally in 2014 and then again in 2015 where Source America stated you have our privileged information in the tapes. And Mr. Craig responded saying there's nothing privileged here because all of those statements are from your attorney, Gene Robinson, who was acting as a monitor under the party settlement agreement to assist bona fide in the program. So his response was reasonable. She is the general counsel. She is the senior vice president. And she is the compliance officer. How could she possibly not waive the privilege? She's the one that has the authority to do so. So, yes, there was an effort, Your Honor, to resolve this. It wasn't resolved. It went to court. To the extent that the lower court made contrary factual findings, are we reviewing that for clear error at this point? We're here on a writ, and the issue, it's clearly erroneous as a matter of law. That's what we're looking at, the third bombing factor. And to turn to the privilege question, there's really three issues on the privilege that I want to address very quickly. One is the choice of law issue. The responding court applied California law here. The effect of that was to flip the burden of proof to bona fide and not to Source America. That had a significant impact on the decision of the court below, and we think that was absolute clear error. The impact of that was that there was a presumption of privilege because under California law, which is the law that the responding court applied, that's permissible. It's not permissible under the federal rules. The federal rules have a specific eight-part test under rule where there is no presumption. The burden of proof is strictly, or the privilege is strictly construed, and it's up to Source America to prove every element, including the fact of non-waiver. It was simply an error to use the wrong law on this issue. But you still had the opportunity to argue that there was a waiver, even if one looked at California law, right? We had the burden of proof to make that argument correct. And by the way, I read both the magistrate's report and recommendation and the district judge's opinion on this, and I see that in both discussions, waiver was discussed under the settlement agreement, and they find no waiver under the settlement agreement. They find no waiver based upon turning things over to the U.S. attorney. But I didn't see, and did I miss, a discussion generally of this was the general counsel and chief compliance officer. That person has the implied authority to waive the privilege. Did I miss that discussion? Apparent authority to waive the privilege. It's mind-boggling that she didn't have the apparent authority, which is why what Mr. Craig did was perfectly reasonable. So did I miss the discussion below about apparent authority based upon someone being a general counsel? There are very vague references to limitations on that authority that Source America claims handcuffed her and took away her ability to have authority. And none of those were known to Mr. Craig, of course. Right. I mean, they require being communicated to the recipient of the communication, right? Correct. That didn't happen. So what we have here is if you follow the rule standard and the eight excerpts and you actually apply the correct law here, the federal law, there's a lack of any evidence supporting three of them, the first, the third, and the eighth. Now, the first element of rule is where the legal advice of any kind is sought. The third, and I'll read the second one because the third one doesn't make any sense unless you read the second one, is sought from a professional legal advisor in his capacity as such and the confirmation relating to that purpose. So you have to have a request and it needs to be communicated. Both of those are missing here. The evidence that was supplied or submitted below by Source America was a declaration from a gentleman named Fields, who was at the time the senior vice president of strategy and innovation at Source America, and his statement, and every time there's an excerpt in his declaration, this is the preamble to it essentially, legal advice that she alleges she provided to Source America concerns the topics of the type that she was asked to opine on. Source America is continuing to review its files to determine if Robinson actually provided this information. So there's never any communication made, acknowledged by Source America here, or that even that this information was requested by Source America. With those two elements missing under the rule test, there can't be a privilege. And then, of course, the eighth element, which is waiver, which we've already discussed. We have general counsel, senior vice president, compliance officer who has a reason to be talking to him. So was the argument of apparent authority fully called to the district judge's and or magistrate's attention, as opposed to simply waiver through the settlement agreement or disclosure to the U.S. Attorney? I believe it was fully briefed below on apparent authority. And I think there was an error there on what a manifest error, clear error, that she didn't have the right to speak to him. She was, you know, in a corporation, the corporation itself has to speak through somebody. The attorney-client privilege isn't inanimate. And the logical people to be able to speak on behalf and waive that privilege, if there in fact is a privilege here, is the general counsel. And at Source America, was Ms. Robinson, as general counsel and chief compliance officer, the highest ranking legal officer? She was general counsel. So there's no one above her on the law department? Correct. Okay. Yeah. With that, I'm going to turn it over to my co-counsel to discuss the ethics issues and the remedy. Thank you. Good morning, Mark Keft. I'm going to address three points of clarification on the ethical issue. The first one is that Source America failed to meet the threshold requirements for applying the RICO standard in this case. There's no substantial evidence supporting finding that it was reasonably apparent that the statements in the eight excerpts were provided or made available through inadvertence. Inadvertence is an important requirement under state fund and picked up by RICO. In the state fund court, and I refer you to the opinion itself, for the reason for that, it's extremely important. They're talking about a delicate balance between a lawyer's ability to represent their client and meet their objectives, at the same time give appropriate consideration for their side's confidential information. Whenever a lawyer seeks, this is from state fund, whenever a lawyer seeks to hold another lawyer accountable for misuse of inadvertently received materials, the burden must rest on the complaining lawyer to persuasively demonstrate inadvertence. Otherwise, a lawyer might attempt to gain advantage over his or her adversary, adversary by intentionally sending confidential information and then bringing a motion to disqualify. Now, when you apply that standard in the cases in California, inadvertence has two applications. The first one is mistake, of course. The document production where the documents get revealed and there's a big mistake. We sent over documents that were published. But the other one is intentional, where it comes in from some third party, like Clark, or it's with a client who absconds or Gomez bootlegs the documents, whatever, pilfers the documents. And so it's reasonably apparent that it is being transmitted to the lawyer without the owner's authorization. On either scenario, you'd have a predicate finding of inadvertence that would then trigger the third requirement of the RICO standard, which is the lawyer then must not review the information any more than is essential to ascertain that it's privileged and then immediately notify the sender. What happens after that is a matter of professional judgment. RICO says that the parties may confer. They may go to court. They may seal the documents. Whatever the justice of the case requires. So there is, and this is the second point I want to make, there is no requirement under the state fund RICO standard that the information must be returned or it has to be put before the court. Those types of cases where the court criticizes counsel for not bringing the matter to the court's attention are cases where the court, excuse me, the counsel has engaged in impermissible excessive use of the privileged information that meets the RICO standard. In California, unlike Hart Pence and unlike Gomez, in California, whether you should bring the matter to the court based upon use goes to the issue of whether or not disqualification is an appropriate remedy. So that follows after the three-part test of the ethical duty under RICO has been met. So under RICO, if you have an ethical obligation to notify the sender, that does not mean you're disqualified. You then go to is disqualification an appropriate remedy or not. In this case, and it's already been briefed so I won't bore you with the argument, the excerpts are not obviously privileged under RICO. The excerpts are in tapes. The tapes themselves are not the property of Source America. The tapes are simply evidence of communications that were voluntarily made by the general counsel for Source America to Mr. Lopez. He has a right under Neal, Bell, other cases to bring information to the attention of his lawyer to get advice. That's perfectly permissible in California. The court held properly that the lawyer had a reasonable to transcribe them for the purpose of being able to review them. That was not impermissible. The court also found that there was no evidence of any improper use by Mr. Craig. Under RICO, we don't disqualify the lawyer because we're concerned about what the client may or may not have done. That's not before the court. It's the lawyer's conduct. It's the lawyer's ethical duties in dealing with information. The other side of claims is it might be subject to attorney-client privilege. It's what that lawyer is supposed to do. Here, that communication occurred in October 2014. We're at the pleading stage. There's been no discovery at this point. Mr. Craig was not involved in the underlying case. He is aware that there are monitoring aspects of the underlying settlement. So he gets his demand. There is a meet and confer. There is an exchange of correspondence. It is Source America that goes to court, which they had a right to do, to seek pre-answered discovery. They briefed it, and the court issued its order. You made a sufficient showing for pre-answered discovery with respect to the two transcripts that are referenced in the First Amendment complaint. Mr. Craig complied with that order. He delivered three transcripts. Discovery was forthcoming a few months down the road. There is nothing to prevent the discoverability of these tapes. It's no different than if Mr. Lopez took notes of the conversations with Ms. Robinson or prepared a contemporaneous memorandum of the conversations. The tapes are not the issue. The transcripts are not the issue. The issue is whether or not Mr. Craig violated RICO in October 2014, and there is a lack of sufficient evidence to support that finding. The district court, applying the California standard, said, well, they're presumptively privileged. RICO doesn't apply a presumption of privilege under the ethical duties of lawyers. So that's an error in our opinion. Number two, there is no ethical standard of California law to bring the matter to the attention of the court. The source of America says, well, we were misled, or the district court was misled, because you didn't tell us that there were more tapes. I encourage you to read that transcript. It's a November 7 transcript. It's at ER 955957. No one is confused. The court, I think, a fair reading of that transcript indicates, look, I'm going to give you these transcripts at this time. Your discovery rights will accrue very shortly, and these tapes were clearly discoverable. The last point I want to make is that disqualification is – there's not – it was abuse of discretion, frankly, to impose a drastic remedy disqualification under these facts. Now, is the legal standard misapplied? But that there is a lack of substantial evidence that there was any unfair advantage or anything done by Mr. Craig that undermined the progress of the case, or something that had a continuing effect on the outcome of the case. Those are the kind of factors that RICO would take into account in deciding whether disqualification is the appropriate remedy. Everyone agrees the eight excerpts, which were not determined to be privy details a year or so later, are not relevant to any issue in the case. Everyone agreed that Mr. Craig and the magistrate make this finding did not improperly use them. It's like Aerojet. My difficulty with your case, counsel, is that you're here on a writ asking for extraordinary relief, and when the district court below decided that disqualification was appropriate, the district court did issue a reasoned decision, including addressing that very point that you just raised, which is whether disqualification is appropriate. And the district court made extensive findings that Source America – and I'm, for your reference, referring to ER page 23 – that Source America, upon learning that there were additional recordings, aside from the three recordings referenced in the First Amendment complaint, repeatedly advised, bona fide, that the Robinson tapes contained privileged information demanded their return. But despite the notices, and also the court of federal claims in the other case had expressed concerns regarding the privilege issue and the legality surrounding the Robinson tapes, that despite all of that notice, Mr. Craig, the lawyer, retained the transcript and recordings and failed to seek the court's guidance on privilege and continued to transcribe the tapes through at least January 2015. And he goes on to acknowledge that it's not a punitive measure, disqualification, but he thinks that the judge thinks that under these particular circumstances, the remedy of exclusion is insufficient and that disqualification is necessary to maintain the integrity of judicial process. And the reason he gave for that is because now Mr. Craig cannot unlearn the privileged information that he's had in his possession for well over two years. Now, those sort of findings, coupled with the extremely deferential review that we need to engage in, how does that lead to an overturning unless the court's factual findings were just completely untethered from the record in this case? Your Honor, they are erroneous as a matter of law because the court applied the wrong standard in evaluating the RICO ethical duties of Mr. Craig. I've covered that. It's been briefed. He applied the wrong standard. He imposed a requirement that doesn't exist in California, that is that when someone else on their side simply makes a nonspecific demand that you are having, you hold privilege information of my client without any specificity, and there is no case in California that holds that that then triggers a RICO obligation. Number two, he imposes a requirement that is not in the law in California, that at that point, October 2014, not in 2015, that Mr. Craig was ethically obligated to either return all the tapes or to bring them there to the court. There is no authority either in California that holds that, and the cases that are cited in the federal circuit all involve impermissible use by the lawyer of the privileged information, which is obviously privileged. Mr. Craig, as a matter of finding in this case, made no impermissible use. These tapes were discoverable. They were in the process of being produced pursuant to request for production of documents and subpoenas. There is no basis for the court. There's no substantial evidence supporting those findings. Lastly, it is punitive. It is not prophylactic, and I think Source America honestly says that in their briefing, page 45 of their answer. Look at that brief. They say the court imposed a disqualification remedy to punish Mr. Craig for unethical misconduct and as a prophylactic measure. They cannot impose the remedy for a punishment on Mr. Craig. Mr. Craig did not have any use of these documents. Whatever the client did in the court of claims case or someone else may have done or some third party may have done is not a basis to disqualify the counsel. Disqualifying the counsel would not have been prophylactic. These tapes were discoverable. The Source America had every opportunity in the world, had it chose to do so, to seek protective orders, sealing orders. They limited their motions to only those tapes that were produced pursuant to the court's November 2014 order, which was complied with. For reasons which I cannot answer, the discovery of their tapes did not proceed until much later in the case, through no fault of Mr. Craig. There's no concealment. There's no wrongdoing. Look at Clark. Look at Goethe. Look at the cases that the court cites. Every single one of those cases involves excessive use of the tapes in pleadings, in motions, and depositions. You do not have that here. So, no, I do not believe the court's order can be sustained on review on a substantial evidence test or because the court applied the improper legal standard. With that, I will reserve our time. Thank you. Thank you. Good morning, Your Honors. Matt Kleiner on behalf of Real Party and Interest and Defendant Source America. Magistrate Judge Bartik concluded Attorney Craig acted in bad faith and violated his ethical duties in the way he handled the Robinson tapes. Judge Curiel overruled Bonafide's objections to these findings and agreed that Craig violated his ethical duties in handling the Robinson tapes. This petition before us today contends that the district court clearly erred, clearly erred in reaching this conclusion, because an objectively reasonable attorney would have concluded that the documents were not privileged based on the circumstances in this case. The district court, however, properly and reasonably, based on substantial evidence in the record, concluded that Attorney Craig violated his ethical duties. So it's important to go through the circumstances of what Mr. Craig knew and what he did to understand the district court's conclusions. First, he obtained recordings that were made by his client Lopez of Ms. Robinson. Those tapes were provided to him in 2013, at least some of them in 2013, and then transcribed. Craig knew that Robinson was the general counsel for Source America. Craig also knew who the individuals were that were identified in the complaint. Now, this is contrary to the petition, which at pages 20 through 21 specifically states that prior to 2015, nothing in the record establishes that Craig had knowledge of the predicate facts necessary to understand who the individuals were in those conversations, their respective roles, and the context of their conversations. That is directly belied by their First Amendment complaint, which was filed a year earlier, which identified all of the individuals that were listed in those transcripts by name and by role. So Mr. Craig, as of 2014, knew the corporate structure of this entity and knew that the general counsel was revealing to Lopez conversations that she was having with the board of directors and other officers of Source America. And did Mr. Craig know that Source America had placed any limitations on General Counsel Robinson's ability to do that or authority to do that or had otherwise placed General Counsel Robinson on this status of lack of confidence or lost confidence? Did Mr. Craig know that? And if so, when did he learn that? On October 6, 2014, Source America's counsel wrote a letter to Mr. Craig telling Mr. Craig that the general counsel did not have authority to disclose any attorney-client communications. The specifics that you referenced in terms of the nondisclosure agreement and those other factors were not included in that letter and were revealed later, I believe, for the first time in the opposition to the motion to dismiss. So it seems to me, and could you take me through the apparent authority analysis? Because it seems that at the time that General Counsel and Chief Compliance Officer Robinson made those disclosures of what appears to now be and would probably then was attorney-client privileged communications to bona fide CEO Mr. Lopez, why didn't she have the apparent authority to do that? And thus, why wasn't that a waiver of the attorney-client privilege? I'd be happy to take you through that analysis, Your Honor. And it needs a little bit more by way of background. So when, in reference to that October 6, 2014 letter when Mr. Craig was put on notice that this information pursuant to Source America was confidential and privileged and that the general counsel had no obligation or had no right to disclose this information, the response and the only effort in terms of a meet-confer requirement was a very short one-paragraph letter where Mr. Craig said, please be advised, we do not have any confidential or privileged information. And that's at ER 401. Now, essentially, Mr. Craig ignored all of his ethical obligations, and he acted as the judge reaching the unilateral conclusion that the materials were not privileged, and therefore he had no obligation to do anything. And why wasn't he right? And this is where I'm going to get to directly respond to your question. I apologize for the background. But the question of privilege and a defense to it, such as waiver, is not at all within the discretion of the attorney reviewing that information. The rules in State Farm and RICO specifically say that if there's a question, we need to talk to the court. So what should happen to the court? I get it. And I think that Mr. Craig may have learned that there's better ways to approach this. But my question simply is, why wasn't there a waiver of the attorney-client privilege under the doctrine of apparent authority when the general counsel of a corporation divulges attorney-client privilege information to Mr. Lopez, the president of Bonafide? The reason why there wasn't a waiver was because all those facts that are mentioned and discussed in the district court's order weren't presented. They weren't discussed. So a waiver is very factual specific, and you have to have all the facts in order to make that analysis. We know based on the declarations that were submitted and as confirmed by the district courts. Are you saying that the issue of apparent authority was not briefed and squarely presented to the court below? No, these issues were briefed, and it was ultimately concluded by the court that the general counsel didn't have the authority to waive the privilege because she was subject to a nondisclosure agreement. I totally get she didn't have the actual authority. I just want to know, what's the reason why she didn't have the apparent authority? For the same reasons. She had no ability on behalf of the company to assert that privilege. So in order to do the analysis of an apparent authority, you need to know all the facts. And if you don't have all the facts, then you simply cannot get to that. That's what I'm saying. Was it squarely presented, all the facts, the parties brought whatever facts they had forward, asked the court to decide there's no actual authority, there's no apparent authority, each side having briefed the factual record and the law that you're relying on. Was that done in this case? I understand that, yes, it was. And the court ultimately concluded that the waiver issue, that there was no authority, whether apparent or actual or otherwise, by the general counsel to disclose this information. Now, can you give me any enlightenment about why, when I read the magistrate's report and recommendation and the district judge's opinion, I see the two discussing that there was no waiver based upon the earlier settlement agreement, there's no waiver based upon a subject matter waiver of disclosure to the U.S. attorney, but I didn't see any discussion of why the doctrine of apparent authority doesn't mean, doesn't yield the conclusion that there was waiver at the time of disclosure from Robinson to Lopez. If you go to ER page 15, which is the district court's order, there's a discussion in the first paragraph under section 2 on that page that discusses all the facts why there was no authority. See, but what I read on that page, and I think that was the page I'm thinking of, was that Robinson didn't have the actual authority from the corporation. She was under a nondisclosure agreement. They previously had voted a no confidence vote of her, stuff like that. But none of that would have been made apparent to Lopez at the time of their conversation, and the company, Source America, held out Robinson as their general counsel, a highest ranking legal officer. So under a doctrine of apparent, not actual, but apparent authority, what was Lopez to know? Here's Lopez being told all these things from Source America's general counsel. Why isn't that a waiver under the doctrine of apparent authority, not actual authority? And was that discussed by the courts below? And if not, why not, if you know? With respect to what Lopez should know or should have known, in those same transcripts, you have the general counsel telling Lopez that I shouldn't be giving you this information. I'm going to change this fact so I won't know who it's coming from. You should destroy this fact. So there's plenty of information to know that Lopez was aware and should have been aware that she didn't have the authority to do what she was doing. She said something to the effect of doing something against her fiduciary duties and obligations. Do you know where in the transcript I'll find that? Which excerpts? If you can look at the Fields Declaration, and it's part of the last volume, and I don't have the exact paragraph. Oh, that's good enough. It does go through that analysis of what she was saying to Lopez. Was there an explanation in the record as to why she was discussing these other matters? In terms of why she was discussing it? Right. Was it idle gossip? Was there a purpose behind discussing these other issues? My understanding is you have a disgruntled employee that decided that she was just going to provide all this information, and she had no authority to do so. And going to whether or not in terms of the actual versus apparent authority, I can't sit here as I'm thinking back in terms of the motions, whether or not the issue of apparent authority was expressly raised and briefed, I don't recall. But in terms of the ultimate answer is that this is a factual issue. And Craig, if you look at his declaration at ER 328, paragraph 6, 8 through 13, says that he reached the conclusion that none of the Robinson tapes or transcripts contained Source America's privileged or confidential information because Ms. Robinson voluntarily disclosed any such information to Mr. Lopez, and she apparently had the authority to make such disclosures by virtue of her position with Source America and her monitoring and reporting duties of the settlement agreement. Now, the concept behind state fund and RICO is that if you're going to reach a conclusion as the attorney that there is a waiver or no apparent authority, those are all defenses to privilege. And that is something that the attorney shouldn't unilaterally be doing. That should be something that should have been brought through the meet and confer process. It could have been resolved during that process. It would have been revealed to Bonafide's counsel that there are all these items in place, nondisclosure agreement, et cetera. But in doing so, in coming to that unilateral decision, the attorney, Craig, ultimately took the risk, the gamble, that he was right. And ultimately, the district court disagreed with his conclusions that there was a privilege or a waiver and concluded that there wasn't. And so now we have Attorney Craig has had privileged information in his possession. He should have known about it all the way back to 2013, 14, 15, when he's constantly reminded of this information. And is at least some portion of the disqualification based on the district court's objective of punishing Mr. Craig? At least in part? No, Your Honor. I believe it's a prophylactic measure. And the district court specifically goes through the analysis with respect to the reasons why it's prophylactic. And the district court realized that Mr. Craig had this information in his possession for over two years. So prophylactic is designed to prevent some harm from occurring. What exactly is the harm that would have occurred or was likely to occur but for this disqualification? Ultimately, the harm that is going to be prevented from occurring is that Craig, who is the attorney who has had this information, has repeatedly been found to have violated the ethical obligations in terms of meeting and conferring and coming forward with this information. What's the past? What's the future harm? What's the future harm that the order prevents? The future harm is that it preserves the integrity of the judicial system. If you have a situation where an attorney is repeatedly violating the ethical rules and… So there's no argument that this information that's now in his head he could actually somehow use in this litigation? No, absolutely. Well, that's… Okay. So there is some harm that's designed to be prevented, namely that Mr. Craig can use the information from the transcripts in the pending litigation, right? Correct. Can you tell me how without revealing any privileged information? Can I tell you how he uses? Is that information relevant to the pending lawsuits? I thought it wasn't. That's Bonafide's position. Okay. Bonafide's position that none of the information is relevant to the pending lawsuits. But ultimately how he uses this information, you have information that are specific. It's confidential information, so it's hard to get into the details of it. But there's discussions of the advice that's being given by general counsel to Source America on handling different matters and whether or not that's going to ultimately come up in terms of credibility, impeachment, or other areas of testimony. This could be used, and there's a real potential that it could be used. Is the district court's finding that you can't unring the knowledge and that there is, as the district court put it, the potential that Bonafide may use privileged information directly or indirectly, is that sufficient? Or did the district court need to kind of delve into the details and make more specific findings as to how the information will likely be used? I think that information is sufficient, Your Honor. And in addition to that, the district court also talks about the fact that this is necessary to preserve the integrity of the judicial system. That second is a different one. Let's talk about the first. The question is, under Grigori, is it whether there exists a genuine likelihood that it will affect the outcome of the proceedings. So this disqualification is proper. Where there is a reasonable probability counsel has obtained information, the court believes would likely be used advantageously against an adverse party. Now, what the court said basically was that there's a possibility that he would use the information. Do you think that what the court said satisfied the probability of reasonable likelihood test? The court's ruling, do you think, meets the Grigori test? I do believe that it has met that test, and that that possibility is a very real possibility. And it's evidenced by the fact that when you go back and look at the use of the transcripts, although not any privileged portion of the transcripts have already been used to help craft the claim in the first amendment complaint. But isn't it the privileged information that's at issue? Is it the privileged information with a genuine likelihood that it will affect the outcome of the proceedings? Correct. But my point is that the information on these tapes has already been used, and that's going to be evidence as to future uses to these tapes. It's near impossible to predict how the eight excerpts sitting here at the beginning stages of litigation may ultimately be used. But that knowledge was all within Craig's possession for two years and can never be removed or unlearned from his. Is there a difference, though, between when the trial judge says there's a possibility it will be used versus the Grigori's requirement that there be a genuine likelihood of use? Is that a meaningful difference? I think that ultimately, in this case, the word – I think there's a – put it this way. There are different words being used, but I think that under the district court's test, it does satisfy the test that we're discussing, and there is a reasonable likelihood. The fact that the court just said possibility I understand is different than what the test is, but I think ultimately there is a very genuine risk and threat that this information will be used. In addition to that, Source America has been substantially damaged by all this information having been revealed and the risk that it's going to be used again in the future. It has been appearing in other cases in the country where Source America has to run around and try to prevent this information from coming out. And so because the information has already been attempted to be used in other litigation, it's likely to be attempted to be used in the litigation in this case. Is it still on WikiLeaks? Yes, Your Honor. I did not go listen to it. So moving back to – in the 2014 timeframe, Source America goes to Craig and says, we – this information is privileged. The position is taken that it is not privileged and there's no further need to confer it. A lot of emphasis is placed on the motions that happen next. And those motions there are – Source America, can I go back? I apologize, but you know what? If it's still on WikiLeaks and it's out there, how is it prophylactic to say, Mr. Craig, you can't continue in this case? How does that in any way solve the problem if there's a genuine likelihood of future misconduct if it's still out in the public domain? Because it directly undermines the judicial system. You can't have information that's being disclosed, which ultimately – But isn't that the whole point? That undermining the judicial system is an offense that the bar should punish? And that is not what this is about. This is about whether it's likely that the – that this information will be used and will affect the course of this proceeding. That's what I understand the disqualification to be for. And what you're concerned about, you know, undermining the judicial system generally, is the matter for the state bar. Your Honor, respectfully, I disagree. I think that in circumstances as set forth in the RICO and state farm decisions, disqualification is appropriate where an attorney fails to comply with the processes that are set forth therein. And ultimately this has led to the production of these documents onto WikiLeaks, regardless of who sent them there, that those transcripts, which were the transcripts that were created by Craig, are on WikiLeaks. And you can't condone or allow that type of actions to occur and then to say that there's no damage to Source America because this information is not allowed there. You're talking about past damage. This says it will likely have no substantial continuing effect on future judicial proceedings. Disqualification is inappropriate, however, simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings. And by future judicial proceedings, that's the California standard. I assume that means in the case involved. Other cases, that's something that's already out there. The information may already be out there, but it's still privileged. And those eight excerpts have been privileged in this case and Source America. So you're talking about a past act that you're removing them for because what's already out there may have been highly inappropriate. But as I read Grigori, at least, it's talking about removing the attorney from this case because his use of that information is going to likely have an effect on the outcome. Maybe I'm reading Grigori wrong. I agree, but the conduct and the reason why all this information is out there is the ethical violations of the attorney in this case. And so you can't… That's punishing him for his past acts. No, it's punishing him for the possibility that this information is going to be used again because he's the one with the knowledge of it. Assuming that the disqualification stands, Mr. Craig is disqualified. A new attorney comes in. We'll call him new attorney. The new attorney is getting ready to cross-examine some folks from Source America. And can that new attorney go onto WikiLeaks and listen to what's out in the public domain and use that information in his or her head to prepare his line of examination or trial strategy? And if so, then how is this possibly prophylactic? That attorney cannot use the information that has been found privileged, regardless of where that information is currently. That information is not on WikiLeaks because of anything that Source America did. So just because it's publicly available, we have taken all steps necessary to try to preserve that privilege, including filing motions to seal and et cetera, including sending a letter to WikiLeaks saying you have to remove this from your site. Of course they're not going to respond. So that could be the subject of a different fight, right, as to whether the subsequent counsel would be unethical in utilizing information and that the court may have to rule on that. Absolutely. And the point is that this attorney, who has clearly acted unethically in their refusal to participate in the meet and confer process, who made misrepresentations in terms of the number of transcripts that existed at the time in 2015, a comment was made that there's no idea why Source America didn't bring up these other transcripts at that time. The reason is because they never told us that they existed, and you can look in the magistrate's order. He said that neither the court nor Source America was ever on notice that any other transcripts existed. But now they're trying to say that we didn't preserve our rights with respect to these other transcripts. Ultimately, all of this information that has been put out there is because of this effort. It can all be drawn back to the poisonous tree. Are you saying that the new attorney and the new attorney staff can't go listen to publicly available information to plan their trial strategy and examinations? I think that there would be some questions about that, and we would send a letter saying this information may be publicly available, but it contains attorney-client information, and if we suspect that you're using it, then that's going to cause some serious issues that we'll have to raise with the court. That's an unusual case, unusual facts. It's a very unusual case. Ultimately, the facts are out there, but Source America will do everything, and we'll have to continue to fight this fight into the future solely because of the improper conduct. Because I think that if we go back— Have you reported this controversy to the state bar? I don't know, Your Honor. That might be a way to solve your problem, because they perform a different function in this rule. And counsel has not even—he's admitted Pro Hoc Vice in here, so I guess the report would have to go to his state bar from wherever he is. Where is it? I might misspeak. I want to say it's Wisconsin or something like that, but I'm not sure. So just to bring up one other point that was raised in the brief, which goes to the fact that the standard that was applied, which was appearance of impropriety, is the wrong standard. The district court had said that there were actually two portions of that. One is, were they ethical? Did the person actually engage in impropriety? And then the other part is, or avoid the appearance of impropriety. We know here, based on all of the discussion that we've had in the briefs, that Craig did engage in impropriety. So whether or not there was an appearance of impropriety is irrelevant. Do you agree that California law applies to this ultimate question? With respect to the privilege? I think that, yes, California law does apply. The only remaining cause of action is a breach of contract claim. Ultimately, from my perspective, it doesn't matter. I think that the magistrate judge did a complete analysis with respect to federal law. The district court judge did the complete analysis with respect to California law, and they both came to the same conclusion, that the documents are facially privileged. And the bona fide actually objected to the finding that the magistrate concluded that these were facially privileged and ultimately overruled us. The question of whether they're privileged is whether there's a likelihood that they will be used in a manner that will have an effect on the outcome of this case. I was talking more about the initial determination of privilege as opposed to the remedy at the end. I think the question on the remedy, are you confident, and if so, why, that California law as opposed to some aspect of federal law would govern the district judge's ability to disqualify an attorney going forward in a pending case? I am confident that California law does apply to dealing with disqualification. We look to California law as it relates to disqualification issues. Even for an attorney who's not admitted to the California bar but admitted to federal court pro hoc vice? Why is that? Interesting question. I ultimately think that he's admitted pro hoc vice, so he's going to be bound by all of the laws that any attorney that is admitted into California state court or California federal court because that's the law that's going to apply in this case. So that would be my analysis. Although if we still had an antitrust claim in it, would your analysis change? I'm sorry, there was what? Wasn't there an antitrust claim that was originally in that was thrown out? That's correct. It was dismissed. Would your analysis change if we still had an antitrust claim? Because certainly then we'd look to federal law on privilege, but that's not where I'm at. If we still had a federal claim and we wanted to talk about whether the district judge and under what circumstances can disqualify an attorney from continuing to appear in pending litigation, then do you still look to state law? I think at that point we would have the federal claims, and we're based on a federal subject matter jurisdiction, so I think you'd first have to look to federal law in that circumstance. If you had a contract claim and an antitrust claim. Then, yeah. Okay, thank you. So just in conclusion, an attorney that has an obligation not only to protect his client's interests but also to respect the legitimate interests of the fellow members of his bar, the judiciary and the administration of justice, and state funds holds that attorneys have a reasonable standard of care. Here there is substantial evidence that Attorney Craig's conduct fell well below the standard of care, and as such we request this Court deny this petition. Thank you. If I may, this is not a standard of care case. This is an ethical obligation that has been announced by the Supreme Court of California. This is the highest authority that governs lawyer conduct, both in state and federal court. Those standards, as articulated by RICO, have not been satisfied in this case. The inadvertent standard, and I commend you to the Leto Durham case, which is a case cited in the magistrate judge's opinion, a footnote, where Justice Tiger actually applies the correct RICO standard in a case that is factually distinct because the email in that case was specific. Justice Tiger? Leto Durham, L-I-D-O-D-E-R-M. This is a California Supreme Court case? It is a case, it is a Northern District, California case, cited by the magistrate judge in a footnote in his report and recommendation. And I read that case, preparing for this argument. That's Judge Tiger in the Northern District. Northern District, yeah, Judge Tiger. And if you read that case, you'll see the correct application by district court of the RICO standard in a case involving an email that was alleged to have been privileged, and the court found, although the email was found to be privileged and was used by the counsel in the case in connection with the motions, it was not inadvertent. There was no reasonable likelihood that that counsel could have determined that that email was inadvertent. Here we have Ms. Robinson, who is not only general counsel, she's a vice president. She is communicating voluntarily to Mr. Lopez, putting aside the issue of apparent authority and waiver. In terms of the ethical standard, a lawyer in Mr. Craig's position in October 2014, not in 2016 or some later time, 2014, that is when the court found the RICO triggers occurred, would not have any basis to conclude that her statements to Mr. Lopez were inadvertent. The excerpts that counsel refers to. Those are not inadvertent, but she says to him, you know, I'm not supposed to tell you this, but I really hate my company, and I have no authority to tell you this, but I want to really get those bastards. Well, okay, but she didn't say that. Well, but let's be clear. The citations that counsel is referring to are from a different transcript. They're from a transcript that is not part of the eight excerpts. But it could be indicative of why this is happening. It's a very, as I said to counsel, very unusual case. But here's the answer. We cite in our brief the DCH foundation versus weight case. That's the case that stands for the proposition that lawyers have the right to assume that other lawyers are acting ethically. Unless they tell them otherwise. Well, they have to say more than just what Ms. Robinson said. You have a right to assume that a counsel for a company is going to comply with their ethical obligations. That's exactly what Mr. Craig had a right to assume in October 2014. The field declaration doesn't even show up until the end of 2000 and sometimes 2016, or 15, I should say. We cannot apply the field declaration to Mr. Craig's review of a nonspecific demand letter in 2014. And his response is appropriate. That's what lawyers do. You get a letter saying, I think you've got my confidence information. The response typically is, can you be more specific? Or I don't agree. That's not a legal violation. And they went to court. They went to court and they got a ruling. There's no misrepresentation. I could not. Does it make a difference, counsel? I mean, if you had been limited to just that interaction, general counsel discloses privileged information. You get a contact from opposing counsel indicating that, wait a minute, I think my general counsel disclosed privileged information. And your response is, no, I don't have privileged information, relying on the apparent authority and position of general counsel. But in this particular case, does it make a difference that there's a two-year history, as the district court pointed out, during which time counsel was put on notice that the privileged nature of the communications are being repeatedly challenged, and a federal court had expressed concern about the privileged nature of the transcript? Isn't the district court entitled to take that history into account? Yes, the court is entitled. And what the court should have looked at is the fact, is Mr. Craig engaged in any impermissible use or excessive review or improper use of the information that was ultimately found to be privileged? The answer is no. All the cases that disqualify counsel is not just when the RICO triggers occurred, but it's what the counsel does next. Aerojet. Or the risk that somehow the outcome of the proceedings would be compromised in some fashion. They can only be compromised if it's used. Look at Gotham. It's used in depositions. It's used in pleadings. There is no use of any of the eight excerpts by Mr. Craig in this case, period. Aerojet is a good case in California. Aerojet was a case where the lawyer got a bunch of documents. Some were privileged, but the lawyer discovered in one document the name of a witness that he later then deposed. That case is not a disqualification case. It's a sanctions case. And the other side said, that was privileged. The court said, that was not privileged. Just like the excerpts in the first amendment complaint. They're not privileged. I'm afraid we're going to have to end this no matter how interesting. Very good, Your Honor. Thank you so much. Thank you all very much. Kept us quite a while on this case. And the case is submitted and the court will stand in recess. All rise.
judges: Reinhardt, Nguyen, Simon